WILLIAM A. PARR, BUILDINGS ENGINEER, *v.* JAMES G. BRADYHOUSE ET AL.

[No. 35, October Term, 1939.]

*Decided November 29th, 1939.*

The cause was argued before BOND, C. J., OFFUTT, SLOAN, MITCHELL, and DELAPLAINE, JJ.

*J. Francis Ireton, Assistant City Solicitor,* with whom was *Charles C. G. Evans, City Solicitor,* on the brief, for the appellant.

246

*Deely K. Nice,* with whom were *Max Sokol, M. William Adelson,* and *Dickerson, Nice & Sokol* on the brief, for the appellees.

SLOAN, J., delivered the opinion of the Court.

Sebastian B. Regester had a tract of land containing 52.87 acres located within the City of Baltimore, on which he had lived and run a dairy business for many years until his death in 1936. The property is now owned by his widow, Bertha Regester, but she discontinued the business, and has leased the property to James G. Bradyhouse, who is conducting thereon a riding academy. The property is bounded by Regester Lane, Brehm's Lane, and Herring Run Park, and is located in what is designated as a residential use district under the Zoning Ordinance, No. 1247. The business of Mr. Regester, having been established before the adoption of the Zoning Ordinance, March 30th, 1931, was not affected by the classification of that ordinance, but under its provisions, in the event of its discontinuance, could not be succeeded by a business of lower classification. *Lipsitz v. Parr,* 164 Md. 222, 164 A. 743; *Landay v. MacWilliams,* 173 Md. 460, 464, 196 A. 293; *Roach v. Board of Zoning Appeals,* 175 Md. 1, 199 A. 812; *Chayt v. Board of Zoning Appeals,* 177 Md. —, 9 A. 2nd 747. The territory in which the Regester property is located is a residential use district, from which farms are not excluded; it is a place where the city and the country meet. Riding academies are not mentioned in the list of exclusions in a residential use district, and the appellees' contention is that it should not be given a lower classification than livery stables and milk distributing businesses, which are amongst those forbidden unless established at the passage of Ordinance No. 1247, March 30th, 1931.

When Bradyhouse rented or leased from Mrs. Regester, he ignored the Ordinance No. 1247, on the theory that his use of the property for a riding academy took the same classification as the milk distributing and dairy business carried on for many years by Mr. Regester, in which he had continued to the time of his death. William A. Parr, buildings engineer of Baltimore, to whom

application for a permit would first be made under the terms of the ordinance, thought otherwise, and filed a bill to restrain Mrs. Regester and Bradyhouse from using the Regester property as a riding academy, and compel the removal of the sign on the property advertising the business. After answer and hearing, a decree was passed dismissing the bill, with which we agree, from which the plaintiff appeals.

The evidence is that Mr. Regester did not farm the land, but was in the milk business, and sold garden truck and poultry. He had as many as thirty cows, but the number on hand when he died was nine. Some years ago he had a pasteurization plant on the place, but it seems to have been abandoned, and for several years all of the milk was taken to Pleasant Valley Dairy for pasteurization, and was distributed by Mr. Regester in a wagon bearing the sign "Woodlawn Farm Dairy," the name under which he did business. A dairy farm permit from the City Health Department was in effect from 1925 to 1937; and a retail permit from 1931 to February, 1937. There was evidence that, in addition to the sale of milk on a route, sales of milk, produce and poultry were regularly made on the place down to the time of Mr. Regester's death.

The horses of the Bradyhouse academy, twelve in number, occupy the same barn or stable as did the Regester cows, and we cannot assume that horses are more offensive than cows. About the only difference, commercially, is that the horses are hired out directly, and it is the product of the cows that is sold and distributed. The Mayor and City Council of Baltimore City overlooked or never thought of riding academies in the drafting of the Zoning Ordinance, and now that they have one on their hands they are, in effect, asking this court to write the exception or omission made by them into their ordinance. In our opinion it is no lower in grade or offensiveness than the forty-four businesses excluded from a residential use district, and the order of the City Court should be affirmed.

*Order affirmed, with costs.*