CARNEY ET VIR. *v.* CITY OF BALTIMORE ET AL.

[No. 40, October Term, 1952.]

*Decided December 5, 1952.*

The cause was argued before MARKELL, C. J., and DELAPLAINE, COLLINS, HENDERSON and HAMMOND, JJ.

*Southey F. Miles,* with whom was *Blanchard D. Carney,* on the brief, for appellants.

*Francis J. Valle,* Assistant City Solicitor for Baltimore City, and *Edwin Harlan, Deputy City Solicitor,* with whom was *Thomas N. Biddison,* City Solicitor, on the brief, for appellees.

DELAPLAINE, J., delivered the opinion of the Court.

The Board of Municipal and Zoning Appeals of Baltimore City refused a permit to Hazyl W. Carney and J.

Calvin Carney, her husband, to construct a one-story rear addition to their two-story dwelling at 3615 Liberty Heights Avenue. The applicants have appealed here from an order of the Baltimore City Court affirming the board's order.

Their lot has a frontage of 30 feet 7½ inches on the south side of the avenue, and runs back 130 feet 3 inches to an alley. The dwelling, which is the west end of a row of eight brick houses, is 22 feet 4½ inches wide and 29 feet 11½ inches long. The yard on its west side is 8 feet 3¼ inches wide.

The dwelling is located in an E area district of a residential use district. The Zoning Ordinance of Baltimore City prescribes that at least one side yard shall be required for every building in such a district; and that each detached building shall have two side yards each not less than 10 feet wide, and each semi-detached building shall have one side yard not less than 15 feet wide. Baltimore City Code 1950, art. 40, sec. 23.

Thus appellants' side yard is much narrower than the ordinance requires. However, the dwelling was built prior to the passage of the zoning ordinance on March 30, 1931, and therefore it is a non-conforming use. The ordinance does not prevent the continuance of any non-conforming use existing at the time of the passage of the ordinance. Non-conforming buildings existing when the ordinance went into effect are allowed to stand, and non-conforming uses are allowed to continue.

The application to the building inspection engineer was for a permit to build an addition 18 feet wide and 18 feet 6 inches long. When he refused to grant a permit, appeal was taken to the Board of Muncipal and Zoning Appeals. There appellants alleged that they had resided in this property ever since they acquired it in 1923, and that they want to continue to reside there, but on account of Mrs. Carney's physical condition it is difficult for her to walk up stairs, and the proposed addition is necessary and desirable to provide a first-floor bedroom and bath. They contended that the addi-

tion would not violate the ordinance and that denial of a permit deprives them of the use of their property arbitrarily, unreasonably and unlawfully. Benjamin Fishman, who resides next door, objected to the application on the ground that it would shut off light to his dining room. Two members of the board voted to sustain the action of the engineer and two members voted to reverse it. As the ordinance requires the votes of four members to reverse action of the engineer, the application for the permit was denied.

The ordinance provides in Section 11 that a nonconforming use may not be extended, except as provided thereafter in the ordinance. Section 22 prohibits the construction of any building except in accordance with the area regulations thereafter prescribed for the area district in which such building is located or is proposed to be located. It also explicitly declares: "No building shall be so extended, altered or moved as to reduce the open spaces prescribed for the area district in which such building is located or such extension is proposed to be located."

Ordinances having in view the general purpose of regulating the erection of buildings in thickly settled communities have become common in recent years. Among the objects for which zoning law area regulations have been established are to secure quiet in residential sections, to afford adequate light, air, and sunshine, to promote sanitation, to reduce the hazards of fire, and to expedite transportation. *Colati v. Jirout,* 186 Md. 652, 47 A. 2d 613. Of course, the governmental power to interfere by zoning regulations with the general rights of the landowner by restricting the character of his use is not unlimited. *Nectow v. City of Cambridge,* 277 U. S. 183, 48 S. Ct. 447, 72 L. Ed. 842; *State of Washington ex rel. Seattle Title Trust Co. v. Roberge,* 278 U. S. 116, 49 S. Ct. 50, 73 L. Ed. 210. However, uses of property which are detrimental to the public health, safety, morals, or general welfare may be prohibited by the State, even though the exercise of such

power may result in inconvenience or loss to individuals. In this respect individual rights are subordinate to the higher rights of the public. *Byrne v. Maryland Realty Co.*, 129 Md. 202, 98 A. 547, L. R. A. 1917A, 1216. In 1927 the Legislature, by enactment of the State Zoning Enabling Act, vested in the Mayor and City Council of Baltimore the full measure of power which the State can exercise for any zoning purpose within the proper scope of the police power. Laws 1927, ch. 705, Code 1951, art. 66B, secs. 1-9.

Side yard restrictions are quite common and have generally been held constitutional. In *Doherty v. Town Council of Town of South Kingstown*, 61 R. I. 248, 200 A. 964, the Supreme Court of Rhode Island sustained an ordinance providing that in a certain residential district each side yard shall be not less than 5 feet in width for any building two stories or less in height, and not less than 8 feet in width for any building more than two stories in height.

Appellants placed reliance on Section 30(B), which provides as follows: "Garages and accessory buildings may be constructed in rear yards provided that not more than fifty per cent of the area of a rear yard (computed by multiplying the depth of the required rear yard by the width of the rear yard) is occupied by such garages and accessory buildings, and the area of the lot that may be occupied, in the aggregate, by a building and garages and accessory buildings, shall be increased by ten per cent of the area of the lot in addition to the maximum percentage of area of lot which may be occupied by buildings, as set forth in the table in Section 23, and further provided that the height of such garages and asscessory buildings shall not exceed fifteen feet, measured from the ground floor of such buildings."

It was stated by the City Solicitor that, even if the proposed addition were considered as an accessory building, it could not be permitted under this section. But we need not undertake the computation, because it is our opinion that the addition could not be classified as

an accessory building. An "accessory building," within the meaning of the zoning ordinance, is a subordinate building, the use of which is incidental to the use of the main building. *Kenney v. Building Commissioner of Melrose,* 315 Mass. 291, 52 N. E. 2d 683, 150 A. L. R. 490; *Francisco v. City of Columbus,* Ohio App., 31 N. E. 2d 236; *Lowrey v. City of Mankato,* 231 Minn. 108, 42 N. W. 2d 553, 556; *Howard v. Mahoney,* 188 Okla. 89, 106 P. 2d 267. This proposed addition would be an integral part of the dwelling and its use would not be accessory. Our interpretation is strengthened by the requirement in the ordinance that garages and accessory buildings hereafter constructed shall be set back not less than 10 feet from all street lines.

It has been suggested that the Board of Municipal and Zoning Appeals has been empowered by Section 35 to make special exceptions to the terms of the ordinance by granting a permit when "there are practical difficulties or unnecessary hardships in the way of carrying out the strict letter of any of the provisions of this ordinance." The board announced that it had held a public hearing on the application for a permit, had given consideration to all the data submitted, had made an inspection of the premises and the surrounding neighborhood, and had determined that the proposed addition would adversely affect the access of light and air to neighboring properties. The board gave consideration to the plea that it is difficult for Mrs. Carney to walk up stairs and that it would be a convenience to have a first-floor bedroom and bath, but determined that the reason was not sufficient for making an exception to the side yard requirement.

On an application for a building permit by making an exception because of practical difficulties or unnecessary hardships, the board should study the evidence to determine whether the need for an exception is of such urgency that injustice will result if the exception is not made, and in making its decision must be guided by the rules, regulations, restrictions, guides and stand-

ards set forth in the ordinance, assuming without deciding that the provision for exceptions is not invalid. The need sufficient to justify an exception must be substantial and urgent and not merely for the convenience of the applicant, inasmuch as the aim of the ordinance is to prevent exceptions as far as possible, and a liberal construction allowing exceptions for reasons that are not substantial and urgent would have the tendency to cause discrimination and eventually destroy the usefulness of the ordinance. *City of Baltimore v. Byrd,* 191 Md. 632, 638, 62 A. 2d 588.

The expression "practical difficulties or unnecessary hardships" means difficulties or hardships which are peculiar to the situation of the applicant for the permit and are not necessary to carry out the spirit of the ordiance and which are of such a degree of severity that their existence amounts to a substantial and unnecessary injustice to the applicant. Exceptions on the ground of "practical difficulties or unnecessary hardships" should not be made except where the burden of the general rule upon the individual property would not, because of its unique situation and the singular circumstances, serve the essential legislative policy, and so would constitute an entirely unnecessary and unwarranted invasion of the basic right of private property. *Easter v. City of Baltimore,* 195 Md. 395, 73 A. 2d 491; *Heffernan v. Zoning Board of Review,* 50 R. I. 26, 144 A. 674; *Potts v. Board of Adjustment of Princeton,* 133 N. J. L. 230, 43 A. 2d 850.

As we find no sufficient reason to justify the board in allowing appellant a special privilege which may be denied to other property owners in a residential use district, the order affirming the board's order will be affirmed.

*Order affirmed, with costs.*